# Staunton.

## Sarah V. Ramsey v. Miners Bank of Commerce.

### September 23, 1926.

1. Fraudulent and Voluntary Conveyances—*Conveyance from Husband to Wife—Conveyance Held Voluntary as Against Wife's Claim that a Real and Valuable Consideration was Supplied by the Wife—Case at Bar.*—A deed by a husband to his wife recited that the consideration was one dollar. The wife claimed that a real and valuable consideration was supplied by her in that she united with her husband in the conveyance of another tract of land in which she claimed an interest in addition to her inchoate right of dower.

   *Held:* That this claim of the wife was discredited by the testimony of her husband that he had inherited this land.

2. Fraudulent and Voluntary Conveyances—*Conveyance by Husband to His Wife—Badges of Fraud—Case at Bar.*—In the instant case, a suit to set aside as fraudulent and voluntary conveyances by a husband to his wife, it appeared that there was a delay in the recordation of both conveyances, during which time, so far as the public were informed, there had been no change in the title, ownership, or use, of the property, and the debt to complainant was contracted before the recordation of the conveyances. In the first conveyance there was a conveyance of the tools of the husband's trade, and while he went out of the State to work he returned once a week, so there was no real change of domicile or legal residence. By the second conveyance he conveyed all his furniture and indeed everything to which a creditor might resort. There was no apparent change of possession or ownership and the husband testified that he afterwards traded some of the property, thus showing that he continued to treat the property as his own. The first conveyance was in consideration of one dollar, and there was an inadequacy of consideration for the second conveyance.

   *Held:* That if it were conceded that these circumstances were alone insufficient to establish fraud, they were sufficient to impose upon the wife the burden of showing the fairness and good faith of the transactions, considering it as a whole. This burden she failed to carry.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*C. R. McCorkle* and *D. F. Kennedy,* for the appellant.

*O. M. Vicars,* for the appellee.

Prentis, P., delivered the opinion of the court.

This is a suit brought by the Miners Bank of Commerce to set aside two conveyances of real and personal property made by S. F. Ramsey to his wife, the appellant, alleging that they were voluntary and fraudulent, and to subject the property so conveyed to a debt due by the grantor to the bank. The decree was in favor of the bank, and the grantee, Sarah V. Ramsey, is here appealing.

The outstanding facts are that in January, 1920, S. F. Ramsey conveyed to his wife, the appellant, two tracts of land, containing about fifty-four acres, in Wise county, "in consideration of the sum of one dollar cash in hand paid." By the same deed and for the same consideration he also assigned to her one "Star" well machine, including all the tools and fixtures, a team of mules and harness, and a two-horse wagon. This deed was dated January 23, 1920, but was not admitted to record until August 29, 1921. In the meantime, in July, 1920, the debt of $1,000, evidenced by a note of T. B. Surface and L. K. Surface, payable to Beverly and Ramsey, and endorsed by J. H. Beverly and S. F. Ramsey, had been acquired by the bank. This note has been renewed from time to time since.

While this indebtedness was outstanding, on July 26, 1922, Ramsey also conveyed to the appellant, his wife, for a recited consideration of $500, "heretofore paid," all of his personal property, itemizing household and kitchen furniture, chairs, beds, bedding, rugs, and "all other household and kitchen furniture of every kind and nature not mentioned above, now owned by the said party of the first part, including dishes, cooking vessels, buckets, and all other goods and chattels owned by the said party of the first part." This assignment was not admitted to record until May 23, 1923.

[1] While upon its face the first deed indicates its voluntary character, the claim is now made that a real and valuable consideration was supplied by the wife, in that she united with her husband in the conveyance of a tract of land in Scott county, Va., of the value of $3,000, in which she claimed an interest, presumably in addition to her inchoate right of dower. This claim of the wife, however, is discredited by the testimony of her husband, who testified that he inherited this Scott county land.

Shortly after this conveyance, in July, 1922, the husband abandoned his business (well-digging and farming apparently) in Scott county, became interested in the Kentucky oil fields, and lost all his available funds in that venture. He testified that he was an accommodation endorser on the $1,000 note referred to, but gives no more specific information on the subject.

The general rules applicable to such transactions between husband and wife, whether voluntary or fraudulent, have been so frequently stated by this and other courts and in so many cases that no good purpose would be served by repeating them. A number of

Virginia cases are cited in *Morrisette* v. *Cook & Bern-heimer Co.*, 122 Va. 592, 95 S. E. 449, and in the notes to Michie's Code, 1924, sections 5184 and .5185.

[2] The badges of fraud in this case are many.

In the first place, there is the delay in the recordation of both of the conveyances, during which time, so-far as the public were informed, there had been no changes in the title, ownership, or use, of the property; and the debt was contracted before the recordation of the first conveyance, and before either the execution or recordation of the second. Then in the first conveyance there was the conveyance of the well machine with its boiler, tools, fixtures, the mules and the wagon, the tools of the husband's trade and his means of subsistence. While he went to Kentucky (Wise county borders that State), he returned home once a week, so that there was no real change of domicile or legal residence.

Then, by the second conveyance, he assigned his household and kitchen furniture, itemized, together with all the rest of his personal property, everything indeed to which a creditor might resort, and as to this transaction he gives this explanation:

"Q. I notice in the deed that you conveyed some personal property such as furniture, etc.; explain when you did this.

"A. Well, I was off down in Kentucky working; I worked down there about three years and she asked for some money to buy some furniture to put in the house and I gave it to her.

"Q. Why was it put in the deed?

"A. She wanted it fixed that way so nobody could take it away from her if anything should happen to me."

Again, after stating that he was without means at

the time he testified, he was asked:   "How long have you been totally insolvent without any property?

"A. Ever since I made the deed to my wife."

This answer, we think, may be fairly construed to refer to the deed rather than to the assignment of his household goods, but this may not be entirely clear.

Then, they lived in the same house, and there was no apparent change of possession or ownership, and he testifies naively that he afterwards traded off the mules for another team, and that he traded off the wagon, thus showing that he continued to treat the property as his own.

Then there is the inadequacy of the consideration, for, while he and his wife testify that the property was not worth more than her interest in the Scott county farm, say $1,000 or $1,500, that it was merely an equal division of the property, and that he had money enough to pay his debts, which he lost in his Kentucky venture, a witness introduced by her testified that it was talked around by different people that the land conveyed to her was worth $10,000 or $15,000; that the land in Wise county was considered to be in the best part of the fruit belt, has on it a good orchard, and is in a high state of cultivation for that county; and while admitting that he had little personal knowledge and was giving only the general opinion, as he understood it, concluded his testimony by saying that if he had been buying it for a home, he would have been willing to pay $8,000 for it.

These condemning circumstances, considered in their entirety, even if it were conceded that they are alone insufficient to establish fraud, are unquestionably sufficient to impose upon the appellant the burden of showing the fairness and good faith of the transactions, considered as a whole.   This burden she has

failed to carry, and has relied entirely upon her own statements and those of her husband as to property values, considerations and motives for the conveyances.

These being the circumstances, the trial court was fully justified in setting aside the conveyances as executed with intent to hinder, delay and defraud creditors. Therefore, the decree will be affirmed.

There are discussions in the briefs of other questions, but in view of our conclusion upon the merits, it is unnecessary to enter this field.

*Affirmed.*